[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the Court has jurisdiction.
Having heard the evidence, the Court finds as follows: CT Page 11336
The Plaintiff and Defendant, whose maiden name was Murallo, intermarried at New London, Connecticut on April 16, 1961; that the Plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; but there are two adult children of the marriage; that there were no other minor children born to the Plaintiff since the date of the marriage of the parties, that the marriage has broken down irretrievably and that there is no hope of reconciliation.
Each party had a different opinion as to why the marriage broke down.
The Plaintiff testified that during the marriage the Defendant was physically abusive; that the Defendant was unfaithful because of his acquaintance with Leticia Hermosa (Plaintiff's Exhibit 3), which photo she found in Defendant's briefcase; that he made many telephone calls to her in Boston, Massachusetts; that Defendant was secretive about money matters, such as a loan of $10,000.00 to Defendant's sister; that Defendant gambled frequently losing money, that Defendant rented motel rooms while in the Groton area, which evidenced extramarital affairs (Plaintiff's Exhibit 2); and that all of the above caused a breakdown of trust in the marriage.
The Defendant testified that he was not unfaithful to Plaintiff; that his interest in Leticia was with her family whom he met while he was employed in Boston; that the many telephone calls to Leticia was to speak to her husband concerning some electrical work to be done in their basement; that Plaintiff made fun of Defendant by calling him Elvis in front of his friends and children; that he did slap the Plaintiff once because she failed to pick him up as he was walking home; that the Plaintiff was physically abusive to him; that on many occasions he came home to a cold supper since she was out; that Plaintiff refused to go with Defendant when his employment took him to different cities; that he did lose $200-300 per week gambling but has stopped gambling and that the motel rentals were for his cousin and for Defendant alone because his wife had company staying at the home when he returned from Boston.
Plaintiff, who was born April 19, 1941, is in good health. She graduated from high school without any special skills. However, for the past eleven years, she has been employed in the CT Page 11337 business office of Lawrence Memorial Hospital. She works 20 to 25 hours per week and earns $10.53 per hour. She claims these are the only hours available to her. Her net weekly income is $175.01.
The Defendant, who was born December 19, 1936, takes medication for high blood pressure, otherwise he appears to be healthy. He is presently employed as an engineer for Stone and Webster. This employment causes him to do much traveling. Defendant's net weekly income is $537.01. See Defendant's financial affidavit. Defendant, who was in the Navy for 19 years, 16 of which were while married to the Plaintiff, also receives a military pension of $220.93 per week. Therefore, his total weekly income is $757.94 per week.
The marital residence known as and located at 160 Virgo Drive, New London, CT was purchased during the marriage. At first the property was owned jointly, but due to potential risks from the operation of a restaurant, Defendant conveyed his interest in said property to the Plaintiff. Presently, the property is mortgage free and has a market value of $190,000.00.
The parties also jointly own an undivided one-half interest in a lot in Lancaster, California. The other undivided one-half interest is owned by Defendant's sister. The Defendant claims that the property is subject to a $28,000.00 mortgage. However, Defendant's Exhibit 1 indicates a mortgage balance of $14,662.86 as of January 1, 1998.
The Defendant and Plaintiff pay $174.00 per month on the mortgage. By agreement with the Defendant, his sister, who borrowed $10,000.00 from the Defendant, will pay the Defendant's $174.00 and pay him an additional $50.00 per month. According to Plaintiff, the property is worth $30,000.00.
The Defendant has an Employee Investment Plan at Stone and Webster valued at $50,751.00 as of December 31, 1997 (Plaintiff's Exhibit 1). As of January 1, 1998, his yearly entitlement is $5,060.00. If he retires at the normal retirement date of January 1, 2003, his yearly pension will be $7,535.00 (Plaintiff's Exhibit 1).
In addition, the Defendant has an ESOP account which had a market value at the end of 1997 of $8,728.16; an Employee Stock Ownership plan which, as of December 31, 1997, had a market value CT Page 11338 of $11,099.00; an IRA valued at $7,067.00 and two credit union accounts totaling $12,000.00.
The Plaintiff has an IRA account valued at $3,927.00, a Lawrence Memorial pension valued at $1,700.00; two bank accounts and a credit union account totaling $17,677.00. However, she admits that the accounts with her son and daughter really belong to the parties.
The parties lease their automobiles.
It is evident from the testimony of the parties that their marriage has broken down irretrievably without any hope for reconciliation and that the parties were equally responsible for the breakdown.
After considering all of the factors in Connecticut General Statutes §§ 46b-61, 46b-62, 46b-82 and 46b-84, in light of the evidence and my findings, judgment is entered dissolving the marriage of the parties in the ground of irretrievable breakdown. It is further ordered:
1. The Defendant shall pay to the Plaintiff alimony in the sum of $150.00 per week for seven years or the death, remarriage or cohabitation of the Plaintiff with an unrelated male, whichever is the first to occur. Said alimony is modifiable as to amount only and non-modifiable as to term.
2. The interest of the Defendant in the marital residence is ordered transferred to the Plaintiff.
In return, the Plaintiff shall issue to the Defendant a promissory note and mortgage on said premises in the sum of $85,000.00 with interest at the rate of 3% per year. Said mortgage is to be paid in five years, remarriage of the Plaintiff, death of the Plaintiff or sale of the premises, whichever is the first to occur.
3. The Plaintiff shall transfer to the Defendant all of her right, title and interest in the California real estate. The Defendant shall indemnify and hold Plaintiff harmless on any mortgages, liens, etc. on said premises.
If the Plaintiff decides to sell the property, the Defendant CT Page 11339 shall have the option for 30 days of purchasing said property at the price Plaintiff is willing to sell.
4. The Defendant's Stone and Webster pension is to be divided equally among the parties. The Defendant's military pension shall be divided 40% to the Plaintiff and 60% to the Defendant. Each shall be entitled to survivor's benefits if available.
The Defendant's attorney is ordered to prepare the QDROs to accomplish the above.
5. Each party shall pay the debts listed on their respective financial affidavits.
6. The Plaintiff shall retain her IRA account; her pension, the bank accounts listed on her financial affidavit, including the children's accounts.
7. The Defendant shall retain his IRA; the SW Federal Credit Union and the Navy Federal Credit Union and his ESOP.
8. Each party shall keep their individual life insurance policies.
9. The Defendant shall pay to the Plaintiff attorney's fees of $1,500.00 within 90 days.
Vasington, JTR